UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS KABROVICH

      Plaintiffs,

v.

KEVIN MCALEENAN, Acting Secretary
Department of Homeland Security, and
Commissioner, United States Customs and
Border Protection,

      Defendant.

_____/

Case No. 19-11564
District Judge Paul D. Borman
Mag. Judge David R. Grand

| James C. Baker (P62668) | Jennifer L. Newby (P68891) |
|---|---|
| Attorneys for Plaintiff | Assistant United States Attorney |
| Sterling Attorneys at Law, P.C. | Attorney for Defendant |
| 33 Bloomfield Hills Pkwy., Ste. 250 | 211 W. Fort Street, Suite 2001 |
| Bloomfield Hills, MI 48304 | Detroit, Michigan 48226 |
| (248) 644-1500 | (313) 226-0295 |
| jbaker@sterlingattorneys.com | Jennifer.Newby@usdoj.gov |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, by and through his attorneys, Matthew Schneider, United States Attorney for the Eastern District of Michigan, and Jennifer L. Newby, Assistant United States Attorney, moves this Court for entry of summary judgment pursuant to Fed. R. Civ. P. 56.

The undersigned counsel certifies that in accordance with E.D. Mich. LR 7.1(a), counsel requested concurrence in the relief requested on July 3, 2020, but concurrence was not obtained.

In support of its Motion, Defendant relies on the accompanying brief, attached exhibits, and documents on file with this Court.

<div style="margin-left: 50%;">

MATTHEW SCHNEIDER
United States Attorney

By:  /s/ Jennifer L. Newby
Jennifer L. Newby (P68891)
Assistant United States Attorney
Attorneys for Defendant
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0295
Jennifer.Newby@usdoj.gov

</div>

Dated: July 6, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS KABROVICH

      Plaintiffs,

v.

KEVIN MCALEENAN, Acting Secretary
Department of Homeland Security, and
Commissioner, United States Customs and
Border Protection,

      Defendant.

_____/

Case No. 19-11564
District Judge Paul D. Borman
Mag. Judge David R. Grand

| James C. Baker (P62668) | Jennifer L. Newby (P68891) |
|---|---|
| Attorneys for Plaintiff | Assistant United States Attorney |
| Sterling Attorneys at Law, P.C. | Attorney for Defendant |
| 33 Bloomfield Hills Pkwy., Ste. 250 | 211 W. Fort Street, Suite 2001 |
| Bloomfield Hills, MI 48304 | Detroit, Michigan 48226 |
| (248) 644-1500 | (313) 226-0295 |
| jbaker@sterlingattorneys.com | Jennifer.Newby@usdoj.gov |

**<u>DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT</u>**

## STATEMENT OF ISSUES PRESENTED

1.      Is Defendant entitled to summary judgment on Plaintiff's claim for disability discrimination where he cannot establish that any action was taken because he has a disability and Defendant reasonably relied on an objectively reasonable medical opinion in finding him unfit for duty?

2.      Is Defendant entitled to summary judgment on Plaintiff's claim for hostile environment where none of the harassment he alleges was based on his disability, was not severe and pervasive, and Defendant took corrective action?

3.      Is Defendant entitled to summary judgment on Plaintiff's claim for retaliation where the alleged harassment began before his protected activity and the actions leading to his termination are unrelated to his protected activity?

4.      Should this Court affirm the Merit Systems Protection Board's ruling that Plaintiff was unable to perform the essential functions of his position as a U.S. Customs and Border Protection Officer where the ruling was supported by substantial evidence and not an abuse of discretion?

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED………………………………………ii

MOST CONTROLLING AUTHORITY ...................................................... iv

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................2

   A.  Plaintiff was allegedly teased for his odd behavior. ....................................2

   B.  Plaintiff's mental health deteriorated prompting a Fitness for Duty
   Examination. ........................................................................................6

   C.  Plaintiff was terminated after he refused reassignment to a non-law
   enforcement position. ...........................................................................11

III.   STANDARD OF REVIEW ....................................................................13

IV.   LAW AND ANALYSIS .........................................................................13

   A.  Plaintiff fails to establish disability discrimination.....................................13

      1.   Plaintiff cannot establish a prima facie case based on his discipline or
      request for an FFDE. ........................................................................14

      2.   Plaintiff  cannot establish that the explanation for any actions was pretext
      for disability discrimination. ..............................................................16

   B.  Plaintiff cannot establish a hostile environment based on his disability. ...20

      1.   Criticism regarding performance is not harassment. ...............................20

      2.   The alleged harassment was not based on Plaintiff's disability. .............22

      3.   The alleged harassment was not severe and pervasive. ...........................23

      4.   Defendant took appropriate corrective action. ........................................24

   B.  Plaintiff fails to establish retaliation...........................................................26

      1.   Plaintiff fails to establish a prima facie case of retaliation. ....................26

      2.   Plaintiff does not establish pretext. .........................................................28

   C.  Plaintiff fails to establish that the MSPB abused its discretion in finding
   that he was not qualified for his position as a CBPO.......................................28

V.  CONCLUSION .......................................................................................30

## MOST CONTROLLING AUTHORITY

**Cases:**

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)

*Bowman v. Shawnee State Univ*., 220 F.3d 456 (6th Cir.2000)

*Broska v. Henderson*, 70 Fed. App'x 262, 270 (6th Cir. 2003)

*Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339 (6th Cir. 2012)

*Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)

*Collette v. Stein-Mart, Inc*., 126 Fed. App'x 678 (6th Cir. 2005)

*Crawford v. Medina General Hosp*., 96 F.3d 830 (6th Cir. 1996)

*Crocker v. Runyon*, 207 F.3d 314 (6th Cir. 2000)

*Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007)

*Gribcheck v. Runyon*, 245 F.3d 547 (6th Cir. 2001)

*Haebe v. Dep't of Justice*, 288 F.3d 1288 (Fed. Cir. 2002)

*Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999)

*Hale v. ABF Freight System, Inc*., 503 Fed. App'x 323 (6th Cir. 2012)

*Hardenburg v. Dunham's Athleisure Corp*., 963 F. Supp. 2d 693 (E.D. Mich. 2013)

*Harris v. Forklift Sys., Inc*., 510 U.S. 17 (1993)

*Holiday v. City of Chattanooga*, 206 F.3d 637 (6th Cir. 2000)

*Jones v. Potter,* 488 F.3d 397 (6th Cir. 2007)

*Keever v. City of Middletown*, 145 F.3d 809 (6th Cir. 1998)

*Kloeckner v. Solis*, 568 U.S. 41 (2012)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986)

*Mazur v. Wal-Mart Stores, Inc.*, 250 Fed. App'x 120 (6th Cir. 2007)

*Michael v. City of Troy Police Dep't*, 808 F.3d 304 (6th Cir. 2015)

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521 (6th Cir. 2012)

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)

*Seay v. Tennessee Valley Auth.*, 339 F.3d 454 (6th Cir. 2003)

*Stone v. Bd. of Directors of Tennessee Valley Auth.*, 35 Fed. App'x 193 (6th Cir. 2002)

*Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804 (6th Cir. 1999)

*Taylor v. Geithner*, 703 F.3d 328 (6th Cir. 2013)

*Tingle v. Arbors at Hilliard*, 692 F.3d 523 (6th Cir. 2012

*Trepka v. Bd. of Educ.*, 28 Fed. App'x 455 (6th Cir. 2002)

*Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463 (6th Cir. 2012)

*Watson v. City of Miami Beach*, 177 F.3d 932 (9th Cir. 1999)

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003)

**Statutes:**

5 U.S.C. § 7703

29 U.S.C. § 794(a)

**Other:**

Fed. R. Civ. P. 56

## I.     INTRODUCTION

As a U.S. Customs and Border Protection Officer (CBPO), Plaintiff was authorized to carry a firearm, and with that authority, comes a responsibility of Defendant to ensure that Plaintiff is fully capable of responding appropriately. Plaintiff was having mental health symptoms and was unable to work for several weeks. Before he could return to duty as an armed CBPO, Defendant required him to take a Fitness for Duty Examination (FFDE) by an independent medical examiner. Plaintiff was found unfit and the psychiatrist noted an inability to use proper judgment and make quick decisions in law enforcement situations. Defendant offered Plaintiff the option of reassignment to a non-law enforcement position but he declined, and was terminated. Plaintiff claims his termination was discriminatory and retaliatory because months earlier he alleged harassment by a supervisor.

The alleged "harassment" from his supervisor was criticism of Plaintiff's work performance and general teasing by co-workers. When Plaintiff reported the alleged harassment, Defendant removed the supervisor and appointed an investigator. While the investigator found unprofessional conduct in the form of teasing and gossiping, which was not uncommon among CBPOs, he did not find that any of the alleged harassment was based on a disability. Nonetheless, Plaintiff claims he was subjected to a hostile environment because he has attention-deficit disorder (ADHD) and a learning disability.

Because the alleged harassment was not based on Plaintiff's disability and was not severe and pervasive, he cannot establish a hostile environment claim. Further, Plaintiff's later termination after he was found unfit for duty and declined reassignment was wholly unrelated to the alleged harassment and was not discriminatory or retaliatory, and was upheld by the Merit Systems Protection Board (MSPB). Accordingly, Defendant seeks summary judgment.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Plaintiff was allegedly teased for his odd behavior.

Plaintiff began training as a CBPO in 2009. (Kab., Ex. 1, p. 27). After academy training, he was assigned to Detroit Metropolitan Airport where he began onsite training. *Id*. at 34. Plaintiff claims he has an unspecified learning disability and ADHD, but he did not disclose his conditions to CBP when he was hired. (MSPB II, Ex. 2, pp. 221-22, 224). Plaintiff claims that he told a few confidants and a union representative about his conditions, but it was not generally known. (*Id*. at 222; Kab., Ex. 1, pp. 41-47). Plaintiff's conditions made it harder for him to do his job and he worked slower than others. (Kab., Ex. 1, p. 41; MSPB II, Ex. 2, pp. 157-58).

Plaintiff alleges he was harassed starting in 2009 while he was still in training. (Kab., Ex. 1, p. 49, 73-74). Plaintiff alleges that supervisory CBPO Christopher Anaya harassed him by allegedly yelling at him for the way he conducted a baggage exam. *Id*. at 49. In 2012, Anaya became Plaintiff's rating supervisor responsible for

his performance reviews. *Id*. at 51-52. According to Plaintiff, the harassment from Anaya consisted of Anaya criticizing Plaintiff's work performance and stating that he processed passengers slower than other officers.[1] *Id*. at 53-54, 57. Anaya was known as a "hard ass," but although he was firm, he was fair. (Kab., Ex. 1, p. 63; Guinn, Ex. 3, ¶ 10). Anaya did not treat Plaintiff more harshly than others who he thought were not doing their job. *See* Guinn, Ex. 3, ¶ 10 (did not treat Plaintiff more harshly than others); Berney Stmt, Ex. 4 (yelled at others as well as Plaintiff). Anaya did not curse at Plaintiff or threaten him. (Kab Stmt, Ex. 5, p. 2; Berney Stmt, Ex. 4, p.1; Fernandez Stmt, Ex. 6, p.1). Anaya applied his "assertive" style "across the board." (MSPB I, Johnson, p. 318).

Plaintiff interpreted Anaya's criticism to mean that he thought Plaintiff was "lacking" and less deserving of respect, although Anaya never made any such statement. (Kab., Ex. 1, pp. 57-61). Plaintiff admits that Anaya never referred to his conditions or him having a disability, nor did Anaya disparage people with disabilities in general. *Id*. at 62, 78.[2] Teasing was not uncommon among CBPOs. (Guinn, Ex. 3, ¶ 7). Gossiping, saying "bad things" about each other, and using

---

[1] Anaya was not alone in his concern with Plaintiff's work performance. (Kab., Ex. 1, pp. 69, 72).

[2] Plaintiff alleges that another officer told him that a group of officers that included Anaya called Plaintiff "Special K" and "T-Rex," but the statement is not only hearsay, it also does not identify who used the nicknames or what was meant by the nicknames. *Id*. at 65-67. Officer Guinn stated the nickname T-Rex referred to the way Plaintiff carried his arms when he walked. (Guinn, Ex. 3, ¶ 6).

nicknames was not unique or exclusive to Plaintiff. (MSPB I, Ex. 7, pp. 120, 126). Anaya made comments questioning the professional judgment or ability of other CBPOs besides Plaintiff. (Berney Stmt, Ex. 4, p. 2).

In February 2016, Plaintiff complained to management that Anaya had ordered him out of his booth and yelled at him in front of other CBPOs. (02-24-16 Email, Ex. 8). Plaintiff claimed that Anaya's manner and criticism "created a hostile work environment." *Id*. Although Plaintiff claimed that he felt Anaya may possibly harm him physically, he testified that Anaya never made any physical threats or contact. (Kab., Ex. 1, pp. 82-84). Two days after the incident, when Anaya learned that Plaintiff felt harassed, he attempted to calm the situation and Plaintiff and Anaya shook hands. (Streetman, Ex. 9). Anaya was issued a Cease and Desist letter instructing him to refrain from contact with Plaintiff. (Cease and Desist, Ex. 10). He was also removed as Plaintiff's rating supervisor. (Kab., Ex. 1, p. 88). During the time that Anaya was Plaintiff's supervisor, he never gave Plaintiff a poor performance rating or issued discipline. *Id*. at 56, 84-85. Nor did anyone else give Plaintiff a poor rating. (MSPB II, Ex. 2, p. 151).

As a result of Plaintiff's allegations of harassment, an independent investigation was ordered. The independent investigator, Chief Adam Streetman, interviewed Plaintiff, Anaya, and several of Plaintiff's co-workers. (Streetman, Ex. 9). During his investigation, Streetman heard from many officers, including Anaya,

that Plaintiff was "different" and had "atypical" behavior. *Id*. Anaya provided emails noting performance issues and unusual behavior by Plaintiff that had been reported to him. (Anaya Emails, Ex. 11). Streetman also heard about unsubstantiated rumors that Plaintiff had damaged vehicles and property. (Streetman, Ex. 9).

Streetman concluded that a hostile environment existed because Anaya's behavior was intimidating to Plaintiff and his co-workers acted unprofessionally by making disparaging comments and spreading rumors. *Id*. As a result of the investigation, Anaya was issued a written reprimand for unprofessional conduct, the first disciplinary action of his career. (Anaya Repr., Ex. 12).

None of the people Streetman interviewed referenced Plaintiff's conditions or him having a disability. (Streetman Dec., Ex. 13, ¶ 6). Streetman concluded that Plaintiff had been harassed because of his atypical behavior. *Id*. at ¶ 7. *See also* MSPB I, Ex. 7, p. 319-320 (Plaintiff "has a different sense of humor, different way of speaking to people" his co-workers reported an "awkwardness with the way he interacts with people"); Guinn Dec., Ex. 3, ¶ 4 (Plaintiff was "lacking in social skills."). At the conclusion of his report, Streetman wrote that "[t]he Port has taken steps to mitigate any further interaction between [] Anaya and [Plaintiff], which seems to have remedied much of [Plaintiff's] concern." (Streetman, Ex. 9). *See also* MSPB I, Ex. 7, p. 319 (after Anaya was moved Plaintiff seemed to be doing ok and was happy). Plaintiff did not have any substantive interaction with Anaya after May

2016. (MSPB II, Ex. 2, pp. 239-40).

On December 22, 2016, Plaintiff failed to escort a passenger for a secondary inspection as required, for which he later received a written reprimand. (Kab. Repr., Ex. 14). In January 2017, shortly after Plaintiff was investigated for his failure to follow procedure, he filed an EEO complaint alleging Anaya and other CBPOs discriminated against him because of his learning disability and retaliated against him for complaining about the harassment. (2017 EEO FAD, Ex. 15). Plaintiff amended his EEO complaint several times to add additional incidents as he believed there was a "faction" of managers and officers that wanted to get him fired. (Kab., Ex. 1, pp. 141-42). He also believed the union did not want to help him. *Id*. at 119-21. The EEO found no basis for his claims. (2017 EEO FAD, Ex. 15).

### B.    Plaintiff's mental health deteriorated prompting a Fitness for Duty Examination.

Plaintiff began receiving mental health treatment in August 2016. (Kab., Ex. 1, p. 104). On August 26, 2016, Plaintiff filed a worker's compensation claim with the Department of Labor (DOL), asserting that he developed an adjustment disorder with anxiety due to the alleged harassment. (DOL Letter, Ex. 16). Plaintiff sought three weeks of sick leave, and his treating psychiatrist, Dr. Ruma Hopkins, wrote on April 3, 2017, that a week long absence in March 2017 was due to a "flare up" of symptoms and that "he should stay off work from 4/5/17 to 4/26/17 and return to work on 4/27/17 because of the on-going severity of his symptoms." (Hopkins 4-3-

17, Ex. 17). The note did not describe Plaintiff's symptoms. *Id*. In response, Port Director Devin Chamberlain asked Plaintiff to provide additional medical documentation on his ability to perform his duties as a CBPO. (Chamberlain 04-06-17, Ex. 18). Specifically, the letter identified particular questions to be addressed by his physician, and asked that the position description expressly be considered with emphasis on his ability to possess a firearm. *Id*. The letter also advised that incomplete documentation may result in the need for a FFDE. *Id*.

On April 10, 2017, Plaintiff provided an FMLA request for leave stating that he was unable to perform "any and all job functions," and described his condition as "anxiety – severe at times – poor concentration and attention – fatigue – agitation – dysphoric mood – sleep disturbance – nervous – depressed." (Hopkins 04-10-17, Ex. 19). Dr. Hopkins further noted that his condition would cause "episodic flare-ups" that would prevent him from performing his job, and that it was medically necessary for him to be absent from work during a flare-up. *Id*. She estimated that he would have a flare-up once a month, lasting 1-2 days. *Id*. Two days later, Dr. Hopkins wrote that Plaintiff had a diagnosis of adjustment disorder with mixed anxiety, ADHD, and a learning disability. (Hopkins 04-12-17, Ex. 20). The letter noted that some of his symptoms were improved with medication, but that he had more anxiety the past few weeks. *Id*. The letter does not reference his position description or his ability to possess a firearm. *Id*.

On April 14, 2017, Chamberlain informed Plaintiff that in accordance with applicable policy, he was temporarily revoking his firearm due to concerns about the mental health symptoms he was experiencing. (Chamberlain 04-14-17, Ex. 21). The letter stated that the decision would be revisited upon receipt of additional medical information. *Id*. On that same date, Dr. Hopkins wrote another letter, with a single sentence stating that Plaintiff "is able to return to work on 4/27/17 without restrictions." (Hopkins 04-14-17, Ex. 22).

On April 28, 2017, Plaintiff was directed to undergo an FFDE to determine, in light of his symptoms, his "capacity to perform the full range of duties of [his] position in a safe and effective manner." (FFDE 4-28-17, Ex. 23). Plaintiff was permitted to return to work, but he was assigned to light duty that he could perform without a firearm. (MSPB I, Ex. 7, p. 327). However, because of Plaintiff's pending worker's compensation claim, there was administrative confusion about the FFDE, which would not be appropriate if related to the worker's compensation claim. (FFDE Email, Ex. 24). The FFDE was erroneously cancelled. *Id*.

Because Plaintiff had not provided documentation that he was capable of performing his duties as a CBPO, including carrying a firearm, he continued to work light duty positions for several months. During that time, Plaintiff's performance declined. (FFDE Support, Ex. 25). He was noted by several people to be inattentive and sleeping on the job. *Id*. Plaintiff was described as lethargic and staring off into

space. *Id*. He also made comments about his firearm that made other officers uncomfortable. *Id*. Plaintiff was given a two-day suspension for sleeping on duty. (Suspension, Ex. 26). Plaintiff's supervisor, Nathaniel Johnson, reached out to request that Plaintiff's fitness for duty be assessed based on reports from passengers and employees about Plaintiff's behavior. (08-22-17 Email, Ex. 27).

Given his behavior, Plaintiff was rescheduled for an FFDE on December 27, 2017. (FFDE 12-27-17, Ex. 28). Psychiatrist Dr. David Im examined Plaintiff in February 2018. (Im Rep., Ex. 29). During his exam, Plaintiff presented documentation but refused to permit Dr. Im to make copies. *Id*. at 18. He also admitted that he stopped taking his medication in April 2017 and was not receiving mental health treatment. *Id*. at 6. Dr. Im reviewed numerous records, including Plaintiff's job description, medical records, letters and emails submitted by Plaintiff, and by Defendant. *Id*. at 2-3, 8-9. He also interviewed Dr. Hopkins and Plaintiff's mother. *Id*. Dr. Im also administered a psychological test that he had interpreted by a psychologist. *Id*. at 17.

Based on his thorough review, Dr. Im concluded to a reasonable degree of medical certainty, that because of his anxiety disorder and ADHD, Plaintiff could not perform the duties of his job as he could not maintain consistent attention and concentration. (MSPB I, Ex. 7, pp. 31-34). He also noted that Plaintiff was unable to "use proper judgment and make quick decisions in law enforcement situations."

(Im Rep., Ex. 29, p. 20). Dr. Im further found that with a combination of medication and treatment Plaintiff may be able to "more effectively manage the full duties of the CBPO position." *Id*. However, he also noted that Plaintiff would need treatment for at least one year, but likely longer, "in order for him to have the best chance of achieving remission of symptoms." *Id*. at 21. Dr. Im's findings were reviewed by another psychiatrist, Dr. John Zincone. (Zincone Rep., Ex. 30). After reviewing the records and Dr. Im's report, Dr. Zincone agreed that Plaintiff was not fit to perform the essential functions of his position "safely and efficiently." *Id*.

Meanwhile, like Defendant, the DOL did not accept Dr. Hopkins' assessment of Plaintiff's condition finding she did not provide a "well rationalized opinion." (DOL Letter, Ex. 16). The DOL requested a second opinion, and in May 2017 Plaintiff received a psychiatric evaluation from Dr. Robert Bernstein. (Bernstein Rep., Ex. 31). Dr. Bernstein found that the alleged harassment was improved and he saw no psychiatric difficulties with Plaintiff's employment. *Id*. However, Dr. Bernstein only obtained information from Plaintiff, did not do any diagnostic tests, and did not know the duties of Plaintiff's job as a CBPO, including whether he carried a firearm. (Bernstein Dep., Ex. 32, pp. 20, 41-43). Dr. Bernstein also admitted that his examination for purposes of a worker's compensation claim is not the same as a fitness for duty examination. *Id*. at 36-38.

**C.     Plaintiff was terminated after he refused reassignment to a non-law enforcement position.**

On March 19, 2018, Chamberlain notified Plaintiff that he had been found unfit for duty as a CBPO. (3-19-18 Letter, Ex. 33). Chamberlain informed Plaintiff that he could elect one of three options: (1) apply for disability retirement; (2) resign; or (3) request reassignment. *Id*. Plaintiff rejected the options and demanded to be returned to duty as a CBPO. (4-10-18 Email, Ex. 34). He also filed another EEO Complaint alleging it was disability discrimination and retaliation when he was not returned to duty based on Dr. Hopkins' letter that he had no restrictions, when he was required to undergo a FFDE, and when he was disciplined for sleeping on duty. (2018 FAD, Ex. 35). The EEO found no basis for his claims. *Id*.

On April 19, 2018, Chamberlain proposed that Plaintiff be removed from his position based on the finding that he was medically unfit for duty. (Proposal, Ex. 36).  The letter included notice that there were CBP technician positions available in Detroit. *Id*. Plaintiff responded and argued that more weight should be given to Dr. Hopkins than Dr. Im, and he should be returned to work without restriction. (5-10-18 Letter, Ex. 37). He also enclosed Dr. Bernstein's report from the worker's compensation claim, the first time the report was supplied to Defendant. *Id*.

On June 8, 2018, Director of Field Operations Christopher Perry approved the proposal to terminate Plaintiff's position. (6-8-18 Letter, Ex. 38). He reviewed all of the medical documentation. (MSPB I, Ex. 7, p. 109). Perry accorded more weight to

11

Dr. Im's findings than Dr. Hopkins or Dr. Bernstein because Dr. Im's evaluation was more thorough, detailed, and was corroborated by other evidence. *Id*. at 111-12. Further, Dr. Hopkins and Dr. Bernstein did not address Plaintiff's job description or ability to carry a firearm specifically. *Id*.

### D. The Merit Systems Protection Board upheld Plaintiff's termination.

Plaintiff filed a claim with the MSPB alleging that his termination was a prohibited personnel action because it was allegedly unfounded and based on discrimination and retaliation. After a hearing, the Administrative Judge upheld Plaintiff's termination. (AJ Dec., Ex. 39). She gave more weight to Dr. Im's conclusions because he did not rely solely on Plaintiff's account, but also spoke with Dr. Hopkins, Plaintiff's mother, and sought input from Defendant. *Id*. at 20. The AJ also noted that although Dr. Hopkins was Plaintiff's treating physician, in April 2016 when she wrote that he needed to be off work and then wrote two weeks later that he could return without restriction, she had only communicated with him electronically and had not examined him. *Id*. at 21. She found most troubling that neither Dr. Hopkins nor Dr. Bernstein had an understanding of what Plaintiff's duties were, and Dr. Bernstein was not even aware he carried a firearm. *Id*. Thus, crediting Dr. Im's findings, the AJ found that Plaintiff was unable to perform the essential functions of his position and removal was proper. *Id*. at 25, 31. She also did not find evidence of discrimination or retaliation. *Id*. at 40-41.

Plaintiff filed an action in this Court alleging: (1) disability discrimination; (2) retaliation; and (3) seeking judicial review of the MSPB decision. (Am. Compl., ECF No. 12). Defendant moves this Court for entry of summary judgment as to all claims.

### III.   STANDARD OF REVIEW

"Summary judgment is proper where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *Newell Rubbermaid, Inc. v. Raymond Corp*., 676 F.3d 521, 526 (6th Cir. 2012) (citing Fed. R. Civ. P. 56). "In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

### IV.   LAW AND ANALYSIS

#### A.   Plaintiff fails to establish disability discrimination.

Plaintiff cannot establish that any action was taken against him solely because of his disability. *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination.").

Courts apply the familiar *McDonnell Douglas* framework to determine

disability discrimination. *See Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). In order to establish a prima facie case of disability discrimination, the plaintiff must establish: (1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open. "The final element 'may also be satisfied by showing that similarly situated non-protected employees were treated more favorably.'" *Id*. at 404. If the plaintiff makes out the prima facie case, the burden shifts to the employer to demonstrate that there was a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. The plaintiff must then show that the reason given by the employer was actually a pretext to mask unlawful discrimination. *Id*.

### 1. Plaintiff cannot establish a prima facie case based on his discipline or request for an FFDE.

Plaintiff cannot establish a prima facie case of disability discrimination based on receipt of a written reprimand for failing to follow procedure because it is not an adverse action where it was not accompanied by any adverse consequence. *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013) ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action.").

Being required to undergo an FFDE is also not an adverse action. *See Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 813 (6th Cir. 1999) (holding a fitness examination "ordered for valid reasons can neither count as an adverse job action nor prove discrimination"); and *Stone v. Bd. of Directors of Tennessee Valley Auth.*, 35 Fed. App'x 193, 200 (6th Cir. 2002) ("There was no evidence that the fitness examination affected the terms and conditions of plaintiff's employment…[n]ot everything that makes an employee unhappy is an adverse employment action."). Thus, Plaintiff cannot establish discrimination based on the discrete acts of a written reprimand and two requests for an FFDE.

Further, Plaintiff cannot establish a prima facie case of disability discrimination based on the written reprimand, removal of his weapon, the two-day suspension for sleeping on duty, the FFDE requests, or his termination because he has no evidence he was treated differently than anyone else under the same circumstances. As to the FFDE especially, Plaintiff has no evidence that any other CBPO submitted documents of similar symptoms and was not requested to undergo an FFDE. Exhibiting odd behavior or mental health symptoms is routinely cited as a basis to request an FFDE. *See Sullivan*, 197 F.3d at 810 (upholding a fitness for duty request noting "an employer needs to be able to determine the cause of an employee's aberrant behavior."); *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (9th Cir. 1999) ("In any case where a police department reasonably perceives an

officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is job related and consistent with business necessity."). There is also no evidence of another CBPO being found unfit for duty and being permitted to return to work in the same position. Accordingly, Plaintiff fails to establish a prima facie case of disability discrimination for his formal discipline, removal of his weapon, requests to take an FFDE, or termination.

### 2. Plaintiff cannot establish that the explanation for any actions was pretext for disability discrimination.

Plaintiff cannot establish that any of the formal discipline he received, removal of his weapon, the requests to take an FFDE, or his termination after he was found unfit for duty were pretext for disability discrimination. Pretext can be established if the plaintiff shows that: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse actions; or (3) the proffered reasons were insufficient to motivate the adverse actions. *Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339, 349 (6th Cir. 2012).

There is no evidence in this case of a "faction" of managers that were out to get Plaintiff as he claims. (Kab., Ex. 1, p. 141-42). Although Plaintiff claims that one of his supervisors, Anaya, routinely criticized him, there is no evidence that it was specific to Plaintiff or that it had anything to do with his disability. More importantly, Anaya never disciplined Plaintiff or gave him a poor performance review, neither did anyone else, undercutting any claim that management was out to get Plaintiff.

(Kab. Ex. 1, pp. 56, 84-85; MSPB II, Ex. 2, p. 151).

There is also no evidence that, when presented with documentation that Plaintiff was unable to work due to a flare up of mental health symptoms, Defendant had any discriminatory motive in (1) temporarily removing Plaintiff's firearm pending further medical documentation, (2) requesting a FFDE after receiving incomplete medical documentation, (3) rescheduling an FFDE when unusual behavior was reported, or (4) terminating Plaintiff's employment when he was found unfit for duty. As Plaintiff held a weapons-bearing position, Defendant had an obligation to ensure that Plaintiff was up to the task. Every action that Defendant took was to confirm that Plaintiff could handle the duties of his position, with an emphasis on his ability to make appropriate decisions with a firearm. There is no evidence that Defendant had any ulterior motive.

The fact that Defendant did not accept Dr. Hopkins' opinion that Plaintiff could return "without restrictions" does not establish pretext. First, Plaintiff was returned to work, he was just not permitted to carry a firearm. Second, Dr. Hopkins' notes did not address Plaintiff's job description or specifically his ability to carry a firearm as requested and her findings were inconsistent where she wrote that he would have regular flare-ups lasting 1-2 days, but wrote that he needed to be off for three weeks. (Hopkins, Exs. 18, 20-21, 23). She also claimed that he could return without restriction, but also wrote that he would be unable to do any and all duties

on a monthly basis. *Id*. Defendant was not alone in finding Dr. Hopkins'
documentation inadequate to explain how Plaintiff's condition impacted him. The
DOL also rejected her opinion and requested a second opinion from Dr. Bernstein.
(DOL Letter, Ex. 16). Although Dr. Bernstein found in the context of a worker's
compensation claim that Plaintiff could return to work, he too failed to specifically
address Plaintiff's job description or ability to carry a firearm. (Bernstein Rep., Ex.
31). Further, his report was not provided to Defendant until after Plaintiff's removal
was proposed. (5-10-18 Letter, Ex. 37). For all of these reasons, it was reasonable
for Defendant to decide not to rely on Dr. Hopkins' opinion and order Plaintiff to
undergo a FFDE with an independent medical examiner.

Defendant reasonably relied on the opinions of Dr. Im and Dr. Zincone in
finding that Plaintiff was not fit for duty and, thus, cannot be found liable for
discrimination. "An employer's determination that a person cannot safely perform
his job functions is objectively reasonable when the employer relies upon a medical
opinion that is itself objectively reasonable." *Michael v. City of Troy Police Dep't*,
808 F.3d 304, 307 (6th Cir. 2015). "A medical opinion may conflict with other
medical opinions and yet be objectively reasonable." *Id. See also Crocker v. Runyon*,
207 F.3d 314, 319 (6th Cir. 2000) (Even if "medical opinions were demonstrably
flawed" in light of opinions from other evaluators, an employer's reasonable reliance
"is not discriminatory" so long as the employer "relied on those opinions in good

faith" in determining the employee could not do the job.). A medical opinion is objectively reasonable where the evaluator conducts an "individualized determination as to the plaintiff's medical condition and its effect on his ability to fulfill his job requirements," as opposed to an "unsubstantiated and cursory medical opinion." *Holiday v. City of Chattanooga*, 206 F.3d 637, 645-46 (6th Cir. 2000).

There can be no dispute that Dr. Im did a thorough individualized determination as to Plaintiff's medical condition. (Im Rep., Ex. 29). He not only examined Plaintiff for over three hours and administered a diagnostic test, he also gathered documentation from Dr. Hopkins, Plaintiff's employer, and the DOL. *Id*. Dr. Im also spoke with Dr. Hopkins and Plaintiff's mother. *Id*. Importantly, Dr. Im also related his findings specifically to Plaintiff's ability to fulfill his duties as a CBPO and his ability to carry a firearm. *Id*. His findings were also subjected to peer review, where his conclusions were affirmed by Dr. Zincone. (Zincone Rep., Ex. 30). Defendant reasonably relied on Dr. Im and Dr. Zincone's conclusion that Plaintiff was unfit to perform as a CBPO.

That Dr. Hopkins or Dr. Bernstein may have reached a different conclusion is not evidence of pretext under *Michael* and *Crocker*. *See also Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012) (where an employer has an "honest belief" in the nondiscriminatory basis upon which it has made its employment decision, there is no pretext, even if its conclusion is later shown to be "mistaken,

19

foolish, trivial, or baseless."). Defendant is entitled to summary judgment on Plaintiff's claim for disability discrimination as Plaintiff has no evidence that the reason for any of the actions he challenges was pretext for disability discrimination.

### B. Plaintiff cannot establish a hostile environment based on his disability.

Plaintiff cannot establish that the "harassment" he alleges constituted a hostile environment in violation of the Rehabilitation Act. In order to maintain an action for a hostile work environment based on disability, the employee must demonstrate that: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures. *Trepka v. Bd. of Educ*., 28 Fed. App'x 455, 461 (6th Cir. 2002) (citations omitted). "To prevail, the employee must show conduct that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and to create an abusive working environment.'" *Id*. "Conduct that is 'merely offensive' will not suffice to support a hostile work environment action." *Id*. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81 (1998).

### 1. Criticism regarding performance is not harassment.

The majority of what Plaintiff relies on as "harassment," is Anaya's, and

others', criticism about his work performance, which cannot be used to establish a hostile environment. "[F]ederal employment discrimination laws have created no 'general civility code for the American workplace,' but instead proscribe only discrimination for statutorily specified reasons." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 588 n.15 (6th Cir. 2003) (citation omitted). In *Broska v. Henderson*, 70 Fed. App'x 262, 270 (6th Cir. 2003), the plaintiff alleged that his supervisors continually monitored him and criticized his work. The court held that absent physical intimidation,[3] verbal abuse, or harassment when he was not on duty, "an objective person simply would not find this environment so hostile and abusive that it effectively altered the conditions of his employment and constituted an abusive working environment." *Id. See also Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998) ("Conversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress."); and *Hale v. ABF Freight System, Inc.*, 503 Fed. App'x 323, 338 (6th Cir. 2012) (a "barrage of criticism" did not create hostile environment because while "such criticisms certainly may have been frustrating and discouraging, they were part of 'the ordinary tribulations of the workplace.'").

---

[3] While Plaintiff alleged he subjectively felt physically intimidated, he does not offer any evidence that a reasonable person would be physically intimidated where Anaya never made any physical threats or contact with Plaintiff. (Kab., Ex. 1, pp. 82-84).

## 2. The alleged harassment was not based on Plaintiff's disability.

There is no evidence that any of the alleged harassment was because Plaintiff is disabled. Sixth Circuit case law requires the court to "distinguish between harassment and discriminatory harassment." *Trepka*, 28 Fed. App'x at 461 (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir.2000)). "[A]n employee must demonstrate that the allegedly harassing conduct was motivated by a bias towards the employee's protected class." *Id. See also Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 467 (6th Cir. 2012) (The "conduct of jerks, bullies, and persecutors is simply not actionable" if it is not discriminatory.).

Plaintiff does not present any evidence of disability-based animus. He admitted that Anaya never referred to his conditions, and did not disparage people with disabilities in general. (Kab., Ex. 1, pp. at 62, 78). Streetman conducted interviews and while he found evidence of teasing and spreading rumors, he did not find any evidence that the treatment was based on Plaintiff's disability. (Streetman Dec., Ex. 13, ¶¶ 6-7). Instead, he found that Plaintiff was singled out because of his atypical behavior. *Id. See also* Guinn, Ex. 3, ¶ 5 ("Some people teased [Plaintiff] for his odd behavior and mannerisms, but I did not witness anyone teasing him on the basis of any medical conditions or disability."). The court in *Crawford v. Medina General Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996), warned against relying on the false syllogism that because Plaintiff has a disability and was treated poorly, the treatment

was because of his disability. The court declined to find that harassment in *Crawford* was based on age, despite two age-related comments, where the plaintiff "simply assumes" that her treatment was based on age "without objectively articulable support." *Id*. Likewise, Plaintiff offers no evidence that the treatment he complains of, which he claims started right away even though he had not disclosed his disability, is based on his disability.

### 3.   The alleged harassment was not severe and pervasive.

Even if Plaintiff could establish that the alleged harassment was based on his disability, the conduct he alleges is not severe and pervasive enough to establish a hostile environment. To establish a hostile environment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993). "Whether an environment is sufficiently hostile or abusive must be judged 'by looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment." *Id*. at 271.

The conduct Plaintiff relies on is regular criticism about his work performance, being yelled at by his supervisor, co-workers spreading rumors that he had damaged property, and the nicknames "T-Rex" and "Special K." The behavior, while not condoned by Defendant, does not create a hostile work environment. The alleged harassment was not objectively severe or intimidating, as the criticism largely pertained to performance, Plaintiff was not cursed at, not threatened, received satisfactory performance reviews, and the behavior was common among CBPOs. *See Mazur v. Wal-Mart Stores, Inc*., 250 Fed. App'x 120, 128 (6th Cir. 2007) (no hostile environment based on disability where employees threw plaintiff's coat on the floor daily, regularly laughed at and teased him, had a nickname for him, and asked him multiple questions and then taunted him for an answer); *Broska*, 70 Fed. App'x at 263-64, 270 (supervisors' regular monitoring and criticism, delay of a cash advance, refusal to allow him to take lunch break with co-workers, was not a hostile environment); and *Hardenburg v. Dunham's Athleisure Corp*., 963 F. Supp. 2d 693, 707 (E.D. Mich. 2013) (no hostile environment based on cognitive disability where supervisor routinely criticized the plaintiff's work and disciplined him in front of his coworkers).

### 4.    Defendant took appropriate corrective action.

When Plaintiff reported Anaya's alleged harassment, Defendant took

appropriate action by removing Anaya, commencing an investigation, and disciplining Anaya. "An employer is strictly liable for supervisor harassment that 'culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.'" *Collette v. Stein-Mart, Inc*., 126 Fed. App'x 678, 682 (6th Cir. 2005) (citation omitted). "But when the employer takes no tangible adverse action, it may raise a defense comprised of two elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. In this case, the harassment from Anaya did not culminate in a tangible action because he did not negatively review or discipline Plaintiff, and he was not involved in any of the decisions regarding Plaintiff's fitness for duty.

Defendant took appropriate action to address the alleged harassment. Anaya was separated from Plaintiff and removed from his chain of command. An independent investigation into Plaintiff's claim was conducted and discipline was meted out as a result. Plaintiff reported that the issue with Anaya was improved and he no longer had any substantive interactions with him. "The most significant immediate measure an employer can take in response to a [] harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Collette*, 126 Fed. App'x at 686. "By doing so, the employer puts all employees on

notice that it takes such allegations seriously and will not tolerate harassment in the workplace." *Id*. Further, to the extent Plaintiff claims the harassment began in 2009, he failed to avail himself of Defendant's harassment policy. (EEO Policy, Ex. 40).

### B. Plaintiff fails to establish retaliation.

Plaintiff cannot establish that any actions were retaliatory for his report of harassment or EEO complaints. The court applies the same *McDonnell Douglas* framework to retaliation claims. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). To establish a prima facie claim for retaliation under the Rehabilitation Act, Plaintiff must establish: 1) he engaged in legally protected activity; 2) the defendant knew about it; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected. *Id*.

### 1. Plaintiff fails to establish a prima facie case of retaliation.

First, Plaintiff cannot establish that the alleged harassment was retaliatory because he did not complain to management until years after the harassment allegedly began. (Kab., Ex. 1, pp. 49, 73-74). Second, as discussed above, a written reprimand and request to take an FFDE is not an adverse action.

Third, Plaintiff cannot establish that the decisions flowing from his request for leave in April 2017 due to mental health issues were retaliation for his report of harassment in 2016. "Proof of temporal proximity between the protected activity and

the adverse employment action" may support a finding of a causal connection, if it

is "coupled with other indicia of retaliatory conduct." *Dixon v. Gonzales*, 481 F.3d

324, 333 (6th Cir. 2007). For temporal proximity alone to suggest a causal

connection, the interval must be very short. *See Clark Cty. Sch. Dist. v. Breeden*, 532

U.S. 268, 273–74 (2001) ("The cases that accept mere temporal proximity between

an employer's knowledge of protected activity and an adverse employment action

as sufficient evidence of causality to establish a prima facie case uniformly hold that

the temporal proximity must be 'very close,'" citing cases where three months and

four months were "insufficient."); and *Hafford v. Seidner*, 183 F.3d 506, 515 (6th

Cir. 1999) ("because the disciplinary actions occurred two to five months after [the

plaintiff] filed charges, and are fairly evenly spread over a period of time, the

inference of a causal connection based on temporal proximity alone is

tenuous…[a]bsent additional evidence, this loose temporal proximity is insufficient

to create a triable issue.").

   In this case, Plaintiff's closest protected activity was the filing of his formal

EEO complaint in January 2017. (EEO FAD, Ex. 15). Plaintiff's weapon was

removed and he was assigned to light duty in April 2017, after providing

documentation that he had mental health issues but failing to comply with

Defendant's requests for more specific medical documentation. The four-month gap

and the decisions that flowed thereafter related to his mental health issues are

insufficient to create a causal connection based on temporal proximity alone. *Hafford*, 183 F.3d at 515.

### 2.    Plaintiff does not establish pretext.

Even if he did establish a prima face case, Plaintiff does not provide evidence that any of the actions taken after his complaints were retaliatory. As noted, the alleged harassment from co-workers predated his protected activity. With respect to his medical issues, Plaintiff was given the opportunity to provide satisfactory medical documentation and avoid an FFDE. (4-6-17 Letter, Ex. 18). Defendant reasonably rejected the inconsistent notes of Dr. Hopkins, which were also rejected by the DOL. (DOL Letter, Ex. 16). Plaintiff was found unfit for duty in reliance on an objectively reasonable individualized medical opinion, precluding an inference of retaliation. (Im Rep., Ex. 29). *See Michael*, 808 F.3d at 307; and *Crocker*, 207 F.3d at 319. Even after he was found unfit for duty as a CBPO, Defendant offered to reassign him to a non-law enforcement position, which he declined. (5-10-18 Letter, Ex. 37). There simply is no evidence that all of this was a ruse by a faction of managers to retaliate against Plaintiff for reporting harassment. Defendant is entitled to summary judgment on Plaintiff's claim for retaliation.

### C.    Plaintiff fails to establish that the MSPB abused its discretion in finding that he was not qualified for his position as a CBPO.

The Civil Service Reform Act of 1978 permits a federal employee subjected to a particularly serious personnel action such as a discharge to appeal the agency's

decision to the MSPB. *See* 5 U.S.C. § 7702. The appeal can challenge whether the agency had grounds to take the action in the first place, but may also challenge whether the action was discriminatory or retaliatory. *Id*. When an employee alleges that a personnel action appealable to the MSPB was based on discrimination, it is known as a "mixed case." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). If the MSPB upholds the personnel action, the employee can seek judicial review. *Id*. at 45. In a mixed case, judicial review of the nondiscrimination claims is on-the-record review for abuse of discretion and the discrimination claims are reviewed de novo. *Seay v. Tennessee Valley Auth*., 339 F.3d 454, 472 (6th Cir. 2003); *see also* 5 U.S.C. § 7703.

Plaintiff's discrimination and retaliation claims based on his termination are discussed above. With respect to the non-discrimination claim challenging the MSPB finding that Plaintiff was not qualified to perform the essential functions of his position as a CBPO at the time of his termination and the propriety of removal, the MSPB did not abuse its discretion and the decision should be affirmed. MSPB findings can be set aside if they are: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *Haebe v. Dep't of Justice*, 288 F.3d 1288, 1298 (Fed. Cir. 2002). An MSPB decision should be upheld if it is "supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Deference is

given to the administrative judge's credibility determinations that are "based on observations of the demeanor of a testifying witness." *Id*. at 1301.

The AJ conducted a hearing over several days after the parties had an opportunity for discovery. She heard live testimony from several witnesses, including Plaintiff and Dr. Im, and was provided testimony from Dr. Hopkins and Dr. Bernstein. (MSPB I, Ex. 7; MSPB II, Ex. 2; Bernstein Dep., Ex. 32). The AJ carefully weighed the evidence and gave detailed reasons for the weight she assigned to each opinion. (AJ Dec., Ex. 39). Based on Dr. Im's more thorough and comprehensive analysis, the AJ reasonably found his opinion to be entitled to more weight on the issue of whether Plaintiff was able to perform the essential functions of his specific position. *Id*. Based on Dr. Im's opinion, the AJ upheld Plaintiff's termination. *Id*. Plaintiff cannot establish that the ALJ's decision was unsupported by substantial evidence or that he decision was an abuse of discretion. *Id*. While Plaintiff may disagree with the AJ's determination, because it was supported by substantial evidence, it must be affirmed.

## V.   CONCLUSION

For the above reasons, Defendant respectfully requests the Court grant its motion and enter summary judgment in favor of Defendant.

MATTHEW SCHNEIDER
United States Attorney

By:  /s/ Jennifer L. Newby

Jennifer L. Newby (P68891)
Assistant United States Attorney
Attorneys for Defendant
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0295
Jennifer.Newby@usdoj.gov

Dated:  July 6, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2020, the foregoing paper was filed with the Clerk of the Court using the ECF System which will give notice to all counsel of record.

/s/ Jennifer L. Newby