UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS KABROVICH

    Plaintiffs,

v.

KEVIN MCALEENAN, Acting Secretary
Department of Homeland Security, and
Commissioner, United States Customs and
Border Protection,

    Defendant.

                                              /

Case No. 19-11564
District Judge Paul D. Borman
Mag. Judge David R. Grand

| James C. Baker (P62668)<br>Attorneys for Plaintiff<br>Sterling Attorneys at Law, P.C.<br>33 Bloomfield Hills Pkwy., Ste. 250<br>Bloomfield Hills, MI 48304<br>(248) 644-1500<br>jbaker@sterlingattorneys.com | Jennifer L. Newby (P68891)<br>Assistant United States Attorney<br>Attorney for Defendant<br>211 W. Fort Street, Suite 2001<br>Detroit, Michigan 48226<br>(313) 226-0295<br>Jennifer.Newby@usdoj.gov |
|---|---|

**<u>DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT</u>**

It is undisputed that Plaintiff was experiencing psychiatric symptoms that made him unable to do his job for several weeks. His treating psychiatrist supplied contradictory medical documentation that failed to address Plaintiff's position description and ability to possess a firearm as requested. Defendant had an obligation to ensure that Plaintiff could make appropriate decisions with a firearm, and sent Plaintiff for an FFDE to determine if he was fit for duty as a CBPO. When he was found by an independent psychiatrist to be unable to perform the duties of his position based on his ADHD and adjustment disorder, Plaintiff refused reassignment and was removed. Defendant did not discriminate or retaliate against Plaintiff for his disability or months' old allegations of harassment – Defendant discharged its duty to ensure that a weapons-bearing law enforcement officer could perform with sound judgment. Defendant is entitled to summary judgment.

**A.      Plaintiff fails to establish disability discrimination or retaliation.**

**1.      Plaintiff fails to establish a prima facie case.**

Plaintiff does not establish a prima facie case for discrimination or retaliation. As previously stated, the reprimand and FFDE are not adverse actions. (Mot., ECF No. 23, PageID.146-47). The alleged harassment began well before any protected activity, and thus is not retaliatory. *Id*. at PageID.158. As to the removal of his weapon, light duty assignment, FFDE, and termination, Plaintiff has failed to identify anyone who was treated differently than him under similar

circumstances to establish discrimination and the temporal proximity is insufficient to establish causation. Thus, Plaintiff fails to establish a prima facie case of discrimination or retaliation.

### 2. Plaintiff fails to establish pretext.

Plaintiff also fails to show that any actions were taken other than for the stated legitimate nondiscriminatory reasons. When Plaintiff reported harassment in February 2016, the matter was investigated, Plaintiff reported improvement, and had no contact with the allegedly harassing supervisor after May 2016. *Id.* at PageID.137-38. After his report of harassment, Plaintiff continued to work as a CBPO and the only discipline he received was a written reprimand because he failed to escort a passenger for an inspection as required. (Rep., ECF No. 23-15). There is no dispute that Plaintiff made the error or that it was a requirement. *Id.*

In April 2017, Plaintiff presented documentation seeking three weeks off work due to the severity of psychiatric symptoms he was experiencing. (ECF No. 23-17). Defendant, who authorized Plaintiff to carry a firearm in the course of his duties as a CBPO, sought further information about Plaintiff's condition. (ECF No. 23-18). There is no dispute that the documentation provided by Dr. Hopkins failed to state that she reviewed his position description or assessed his ability to use a firearm. (Hopkins, ECF No. 30-13, pp. 51-53). In light of the incomplete and contradictory information from Dr. Hopkins, claiming both that Plaintiff could

return without restrictions, but also claiming he would be unable to do his job on a regular basis, in accordance with regulations, Defendant requested an FFDE. (ECF No. 23-23). There is no evidence that any other CBPO reported similar psychiatric symptoms and was treated differently.

The initial FFDE was not "illegal" as Plaintiff claims. Rather, because Plaintiff had a simultaneous worker's compensation claim for the same issue, there was administrative confusion and the FFDE was cancelled, though it should not have been. (ECF No. 23-24). Plaintiff nonetheless returned to duty, but was relieved of his weapon. (ECF No. 23-21). Contrary to his claims that the light duty task of escorting passengers to which he was assigned while he did not have a weapon was "excessive," it was within his job description. (ECF No. 23-18, PageID.753) (requirements for a CBPO include "considerable and strenuous physical exertion, such as long periods of standing, walking, and running…").

In April 2017, although Plaintiff was seeking several weeks off work due to the severity of his symptoms, he stopped taking his psychiatric medication without first consulting his psychiatrist. (Hopkins, ECF No. 30-13, p. 30). His performance and behavior declined. (ECF No. 23-25). Plaintiff admitted sleeping on the job and received a two-day suspension. (ECF No. 23-27). Contrary to his claim, there is no evidence that Plaintiff received unwarranted discipline based on his disability or protected activity. However, there were reports of his lethargy and odd behavior

4

from supervisors, union representatives, and passengers. (ECF Nos. 23-25, 23-26). Regardless of the cause of Plaintiff's psychiatric symptoms and behavior, Defendant had an obligation to ensure that Plaintiff was fit for his position where Defendant authorized him to carry a firearm. Plaintiff was again ordered to undergo a FFDE. (ECF No. 23-28). The case law Plaintiff cites claiming that he cannot be disciplined for his symptoms because they were a reaction to the alleged harassment is unavailing. First, his termination was not disciplinary. He was terminated because he was found unable to do the job, not as a punishment. Second, Dr. Im found that he was unable to perform his duties based on both his ADHD and his adjustment disorder, and his ADHD was not caused by the alleged harassment. Most importantly, it cannot be the law that because Plaintiff claims to have emotional distress from alleged harassment, he is then entitled to retain his weapon-bearing position even though he was found unfit to do so.

Additionally, the argument that because the reasons for the second FFDE were different than the first is somehow indicative of pretext is unavailing. This is not a case where the Defendant repeatedly changed the reason for a termination calling into question the credibility of the reason – in this case, there were two separate FFDE's ordered at different times and the explanation of why it was required was different, though both related to Plaintiff's mental health. (ECF Nos. 23-23, 23-28). It was also reasonable not to rely on Dr. Bernstein's opinion in the

5

worker's compensation case that Plaintiff was not disabled from working. Dr. Bernstein conducted a general psychiatric examination, not an examination of whether Plaintiff was fit to do each of the functions required of a CBPO. (Bernstein, ECF No. 23-32, pp. 38-43). As he explained, Dr. Bernstein did not even know what Plaintiff's exact position was and did not address his ability to use a firearm in the course of his duties. *Id*. Further, the DOL provided Defendant with a letter summarizing Dr. Bernstein's opinion, not his full report. (ECF No. 23-16). In the letter, the DOL also criticized Dr. Hopkins' documentation as not providing a well rationalized explanation. *Id*.

Defendant did not discriminate or retaliate against Plaintiff by relying on the objectively reasonable medical opinion of Dr. Im finding Plaintiff unable to perform the duties of his position. As discussed in detail in the motion, Dr. Im conducted a thorough examination and did not rely only on information solely from Defendant or Plaintiff, but gathered information from a variety of sources, including Plaintiff's treating psychiatrist and his mother. (ECF No. 23-29). Even Dr. Hopkins called Dr. Im's report "extensive." (Hopkins, ECF No. 30-13, p. 38). Dr. Im is the only person who specifically evaluated Plaintiff's ability to use a firearm in the course of his duties as a CBPO. (ECF No. 23-29). He found that based on his evaluation, which included a discussion with Dr. Hopkins, Plaintiff was unable to perform the duties of a CBPO due to his ADHD and adjustment

6

disorder. *Id.* Plaintiff incorrectly claims that Dr. Im stated Plaintiff should not be fired; he only opined that with at least a year of treatment, Plaintiff may be able to return to his duties. *Id.*

Plaintiff does not address the case law unequivocally holding that where an employer relies on an objectively reasonable medical opinion finding an inability to perform the duties of a position, even if other professionals disagree with the conclusion, there is no discrimination or retaliation. *See Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015); *Crocker v. Runyon*, 207 F.3d 314, 319 (6th Cir. 2000); and *Holiday v. City of Chattanooga*, 206 F.3d 637, 645-46 (6th Cir. 2000). The issue is not whether Dr. Im is ultimately correct, but whether he conducted a reasonable medical examination. Plaintiff's termination was based on objectively reasonable medical evidence. Defendant is entitled to summary judgment on Plaintiff's claims of discrimination and retaliation related to his termination.

Nor is there any other evidence of discrimination or retaliation in this case. There was no general animus towards people with disabilities. According to Plaintiff, everyone knew he was disabled (which Defendant disputes) and he had eight years of no discipline and satisfactory performance evaluations. Further, inasmuch as Plaintiff claims he was nonetheless harassed about his work performance, there is no evidence it was based on his disability rather than his

7

admittedly slower performance and social awkwardness. (Mot., ECF No. 23, PageID.134-35, 137). Plaintiff admits that the supervisor who allegedly harassed him never mentioned disabilities. *Id.* at PageID.135. Nor is any alleged harassment retaliatory, because Plaintiff claims it began before his protected activity.

### B. Plaintiff fails to establish a hostile environment.

The hostile environment claim consists only of the alleged harassment, the discrete acts are addressed in the discrimination and retaliation claims. The only harassment identified by Plaintiff is "hostility" by his supervisor and co-workers. (Resp., ECF No. 30, PageID.1379). Although Plaintiff claims that the hostility was because he has "ADHD and a learning disability," his subjective opinion of why he was harassed is not sufficient to create a genuine issue of fact. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (noting a lack of "actual evidence of racial animus" and that the plaintiff supported "each allegation only with a citation to his own testimony stating his personal opinion that he was the victim of racial harassment," holding that "[c]onclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.").

There is no evidence of animus towards people with disabilities. Plaintiff did not state anywhere in his email reporting harassment that any of the alleged conduct related to his disability. (ECF No. 23-9). Plaintiff also admitted that Anaya never made any comments about people with disabilities or Plaintiff's conditions.

8

(Mot., ECF No. 23, PageID.135). Plaintiff refers to the report completed by independent investigator Streetman as a "smoking gun" because co-workers referred to him as "different." A review of the report shows that there is no mention of ADHD, a learning disability, medical conditions, or any disability related comments. (ECF No. 23-10). Although Plaintiff's co-workers stated that Plaintiff is "different" and "atypical," there is no indication that anyone intended to refer to his disabilities by that characterization. Nor did Plaintiff depose Streetman or his co-workers to determine what was meant by the statement. There is ample evidence in the case that Plaintiff had atypical social behavior, and that is what led to any ostracism. (Mot., ECF No. 23, PageID.137).

While the alleged harassment of Plaintiff for his work performance and idiosyncrasies is not commendable behavior, it is also not discrimination. *See Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 467 (6th Cir. 2012) (The "conduct of jerks, bullies, and persecutors is simply not actionable" if it is not discriminatory.). Indeed, Anaya was disciplined for making disparaging comments, which Plaintiff already admitted were not related to his disability, and for yelling at him in front of others, but there is no evidence that Anaya was found to have discriminated against Plaintiff based on a disability. (ECF No. 23-13). While Streetman concluded that there was a hostile environment because Plaintiff's co-workers ignored him and spread rumors, and Anaya yelled at him, there is no

evidence that any of the conduct was based on his ADHD or learning disability. To the contrary, Streetman concluded that Plaintiff was treated differently because he is odd, not because he is disabled. (ECF No. 23-14). Plaintiff fails to establish that he was subjected to severe and pervasive harassment based on his disability and Defendant is entitled to summary judgment.

Plaintiff also glosses over the fact that the alleged harassment was appropriately addressed by Defendant. Anaya was removed as Plaintiff's rating supervisor, an investigation was commenced, and Anaya was disciplined. (Mot., ECF No. 23, PageID.136-37). Moreover, Plaintiff told Streetman that the situation had improved and he testified that he did not have contact with Anaya after May 2016. (ECF No. 23-3, PageID.348-49). The later issues regarding Plaintiff's mental health arose in April 2017, and did not involve Anaya. Because Defendant took prompt corrective action that addressed the alleged harassment before it culminated in a tangible action, Defendant is entitled to summary judgment.

### C. Plaintiff fails to establish the Administrative Judge abused her discretion when she upheld his termination.

Plaintiff misunderstands the appropriate standard of review. As he states, this is a mixed case because it involves both his claim before the MSPB that his termination violated the Civil Service Reform Act and affirmative defenses of discrimination and retaliation. The discrimination and retaliation claims regarding his termination are reviewed de novo, and are addressed above. *See Seay v.*

10

*Tennessee Valley Auth.*, 339 F.3d 454, 472 (6th Cir. 2003); and 5 U.S.C. § 7703. However, the remaining claim that his termination was a prohibited personnel action is subject to review for abuse of discretion. *Id*.

The AJ conducted a hearing with both live and written testimony and issued a lengthy opinion. (ECF No. 23-38). As discussed in the motion, the AJ gave detailed reasons for why she credited Dr. Im's finding that Plaintiff was unfit for his position as a CBPO over Dr. Hopkins and Dr. Bernstein's conclusions. She also found that termination was proper. The AJ did not abuse her discretion. Plaintiff does not even address this claim in his response, and therefore, it is waived. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

For the above reasons and those stated in the motion, Defendants respectfully request entry of summary judgment.

                                              MATTHEW SCHNEIDER
                                              United States Attorney

                                              By:  /s/ Jennifer L. Newby
                                              Jennifer L. Newby (P68891)
                                              Assistant United States Attorney
                                              Attorneys for Defendant
                                              211 W. Fort Street, Suite 2001
                                              Detroit, Michigan 48226
                                              (313) 226-0295
                                              Jennifer.Newby@usdoj.gov

Dated:  September 28, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2020, the foregoing paper was filed with the Clerk of the Court using the ECF System which will give notice to all counsel of record.

/s/ Jennifer L. Newby